# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action Number |
| | ) 19-00047-01-CR-W-HFS |
| Donnell Mullins, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

On January 6, 2020, the undersigned filed a REPORT AND RECOMMENDATION [Doc. 45] with the district court recommending that the MOTION TO SUPPRESS EVIDENCE [Doc. 28] filed by defendant Donnell Mullins ("Mullins") on July 30, 2019, be granted. On the last day to file an objection to the report, the government filed with this Court its MOTION FOR RECONSIDERATION [Doc. 47]. Therein, the government noted that it was "not filing objections" to the REPORT AND RECOMMENDATION, but rather was asking the Court to reconsider its conclusion of law "that the seized firearm should be suppressed as a fruit of the unlawful investigative stop."

The government's procedural approach places the case in a unique posture. Accepting the government's statement at face value, the previous REPORT AND RECOMMENDATION was not objected to (although, to date, it has not formally been adopted by the district court). In general, the use of magistrate judges to conduct hearings and generate report-and-recommendations is intended to streamline and expedite federal case resolutions. The filing of a motion to reconsider with a magistrate judge – as opposed to merely objecting directly to the district court that made the referral – risks imposing unnecessary and needless layers of delay. The practice employed herein is certainly disfavored.

Mullins asserts that being more than disfavored, this Court has no continuing jurisdiction, quoting from the REPORT AND RECOMMENDATION the well-settled law that a "failure to file and serve timely objections shall bar attack in [any] appeal."  However, this case is not on appeal and the district court has entered no final judgment in the case.  To that end, every order on a motion to suppress (even those adopted by a district court) are merely interlocutory and subject to <u>potential</u> further consideration.  Illustrative of the principle is the treatment of reports-and-recommendations to which no objections are made.

A district court reviews a magistrate judge's report-and-recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006).  In examining these statutory standards, the Supreme Court has explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn,* 474 U.S. 140, 154, 106 S. Ct. 466, 474 (1985).  Consequently, a district court <u>may</u> review *de novo* any issue in a magistrate judge's report and recommendation at any time." *United States v. Yockey*, 654 F. Supp. 2d 945, 950-51 (N.D. Iowa 2009).  The same logic would seem to extend to a magistrate judge to whom the case has been referred for a report – at least, at a minimum, until such time as the district court adopts the magistrate judge's report.

In its present motion for reconsideration, the government does not challenge the majority of the original REPORT AND RECOMMENDATION. In that report, after briefing and an evidentiary hearing, the Court concluded that Mullins was subjected to an unconstitutional search and seizure when he was detained by Officer Malcolm Whitelaw on January 31, 2019.

The evidence showed that, on that date, Officer Whitelaw was responding to a report of a home break-in where copper and appliances had been taken. Officer Whitelaw had no information regarding any suspect or suspects – no information on number of individuals, race, age, gender, or clothing. As Officer Whitelaw approached the area of the reported break-in, he observed Mullins – who was wearing headphones – walking on the sidewalk with his "head tucked down" and "looking over his shoulder" at the police car. Mullins did not appear headed to any vehicles and had no bags, packages, duffle bag or backpack.

After driving past Mullins, Officer Whitelaw turned his vehicle around and "decided to go and stop and talk to [Mullins] and see if there was anything there." Office Whitelaw activated his lights, brought his vehicle to a stop at an angle near Mullins and asked him to approach. As testified to by Officer Whitelaw, once he activated his lights, he did not believe Mullins was free to leave until he at least answered some questions.

As Mullins approached, he removed his headphones and Officer Whitelaw asked him if he had a gun and Mullins said that he did have a gun. Officer Whitelaw then placed Mullins in handcuffs and seized a handgun from Mullins' person. After learning Mullins' name, Officer Whitelaw ran Mullins' name and the serial number from the handgun and learned that: (1) Mullins was a felon, (2) Mullins was wanted on an outstanding Jackson County warrant, and (3) the handgun had been reported as stolen. Eventually, Mullins was indicted in federal court as a felon-in-possession.

In response to Mullins' motion to suppress, the government argued the stop of Mullins was a valid *Terry* stop. In the alternative, the government argued that the handgun would have been inevitably discovered, citing *Nix v. Williams*, 467 U.S. 431, 448, 104 S. Ct. 2501 (1984).

In the REPORT AND RECOMMENDATION, the Court found that, prior to initiating the investigative stop of Mullins, Officer Whitelaw was aware:

(a) A burglary of appliances and copper had been reported in the area; and

(b) Mullins was a pedestrian in the area and had his "head tucked down" and "looked over his shoulder" at the police car.

The Court concluded that those facts – standing alone – fell short of the standard required to justify a *Terry* stop of a pedestrian. The Court also found that since "the initial stop was itself unconstitutional, the subsequent fruits of that initial stop must be suppressed."

In its MOTION FOR RECONSIDERATION, the government asserts that suppression is not required in this case based on application of the "attenuation doctrine" as delineated in *Utah v. Strieff*, — U.S. —, 136 S. Ct. 2016 (2016). In the motion, the government generally accepts the prior findings and conclusions, limiting the basis for "reconsideration" to a single issue:

> The United States agrees with this Court's finding that [Officer Whitelaw] conducted an investigative stop of [Mullins], but lacked a sufficient reasonably articulable sufficient to justify that stop under *Terry*. . . . Although Officer Whitelaw stopped Mullins without reasonable suspicion, Officer Whitelaw ultimately arrested Mullins pursuant to a valid warrant. Because of the valid arrest warrant, Mullins' arrest sufficiently attenuated any taint from the unlawful stop, and therefore any fruits from the arrest are admissible.

While acknowledging Mullins' procedural objections to this Court's consideration of the attenuation doctrine, the Court concludes the best interests of justice are served by addressing the argument and, as such, denies Mullins' motion to strike [Doc. 49] the government's motion.

The Fourth Amendment of the United States Constitution guarantees a person's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Because the Fourth Amendment contains no explicit enforcement provision of its own, the Supreme Court long ago created "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial, the so-called 'fruit of the poisonous tree.'" *Herring v. United States*, 555 U.S. 135, 139, 129 S. Ct. 695, 699 (2009) (*citing Weeks v. United States*, 232 U.S. 383, 398, 34 S. Ct. 341, 346 (1914)). This federal "exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and, relevant here, evidence later discovered and found to be derivative of an illegality" *Strieff*, 136 S. Ct. at 2061.

Since its adoption, application of the exclusionary rule has been the subject of considerable consternation and criticism from both the public and legal academicians. As a consequence, the Supreme Court has characterized suppression of evidence as a "last resort" and thus the exclusionary rule should only be applied "where its deterrence benefits outweigh its substantial social costs." *Hudson v. Michigan*, 547 U.S. 586, 591, 126 S. Ct. 2159, 2163 (2006). To that end, the Supreme Court has recognized three exceptions to the exclusionary rule:

(1) the independent source doctrine,

(2) the inevitable discovery doctrine, and

(3) the attenuation doctrine.

*Strieff*, 136 S. Ct. at 2061. The government does not claim application of the independent source doctrine and the Court previously rejected the inevitable discovery doctrine in its earlier REPORT AND RECOMMENDATION. In the MOTION FOR RECONSIDERATION, the Government instead raises for the first time the attenuation doctrine.

As explained by the Supreme Court in *Strieff*, under the attenuation doctrine, the exclusionary rule is not applied "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Id*. Courts utilize a "three-part test" to determine the propriety of applying the attenuation doctrine, to wit:

> (1) courts examine the <u>temporal proximity</u> between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search – the closer in time, the more suppression is warranted;
>
> (2) courts consider the <u>presence of intervening circumstances</u> – was the intervening event (the existence of an outstanding arrest warrant) unconnected to the purpose for the unconstitutional stop of the defendant, and
>
> (3) courts examine the <u>purpose and flagrancy of the official misconduct</u> – when police misconduct is "purposeful and flagrant," deterrence though suppression is most appropriate.

*United States v. Lowry*, 935 F.3d 638, 642-43 (8th Cir. 2019). The third factor is "particularly significant." *Strieff*, 136 S. Ct. at 2062; *Lowry*, 935 F.3d at 642. However, none of the factors involves a bright-line application and, ultimately, a Court must consider all three factors in the totality of the circumstances to determine whether the interest protected by the constitutional guarantee that has been violated would or would not be served by suppression of the evidence obtained.

In this case, the first two factors are largely a wash with temporal proximity favoring suppression and intervening circumstances favoring no suppression. *Compare Lowry*, 935 F.3d at 643. Consequently, the Court looks to purposefulness and flagrancy.

In *Lowry*, the Eighth Circuit was also presented with an analysis of the third factor. In that case, a law enforcement officer arrived at a bus stop while engaged in his routine patrol. *Id*. at 640. At the bus stop, the officer began questioning an individual with whom he had dealt with on previous occasions. *Id*. While talking with this individual, the officer "noticed [the defendant nearby] looking in his direction and then getting up to walk behind the other shelter, out of his sight." *Id*. After a short time, however, the defendant emerged from behind the shelter while the officer was still talking with the other individual. *Id*. Subsequently, the officer "made eye contact" with the defendant who "turned away and started to walk behind the shelter for a second time." *Id*. At that point, the officer "shined his flashlight on him and ordered him to come over." *Id.*

The defendant obeyed the directive and provided the officer with identification. *Id*. An ensuing warrant check revealed outstanding warrants for the defendant. *Id*. Thereafter, the officer approached the defendant and asked him to place his hands behind his back, at which point the defendant informed the officer that he had a gun in his waistband and that he was a convicted felon. *Id*.

The court in *Lowry* concluded that the stop of the defendant was unconstitutional inasmuch as it was not supported by reasonable suspicion:

> The [officer] could only offer a vague justification that he suspected [the defendant] was engaged in some sort of criminal activity and might have been hiding weapons, drugs, or alcohol when he walked behind the bus shelter. Leaving aside the issue that possessing weapons and alcohol is not necessarily a crime, reasonable suspicion must rest on a particularized and objective basis, and not a mere hunch. [The officer's] explanation for the stop suggests that this stop was in fact based on a hunch.

*Id*. at 641-42. Nonetheless, the Eighth Circuit found that the attenuation doctrine applied (and thus suppression was unwarranted). *Id*. at 644.

7

Principally the Eighth Circuit found that the misconduct of the officer in *Lowry* was not purposeful and flagrant. *Id*. However, in so finding, the Court made note that the existence of an outstanding arrest warrant is not a magic talisman that automatically wipes away any and all antecedent unconstitutional conduct. *Id.* ("*Strieff* did not announce a *per se* rule that the discovery of a warrant would always vitiate subsequent searches."). Instead, every case has to be evaluated under its unique factors. And, with regard to the purposefulness/flagrancy factor, the Court made clear that a *per se* rule also does not apply to the benefit of a defendant:

> The Supreme Court in *Strieff* made it clear that "[f]or [a] violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure."

*Id. (quoting, in part, Strieff*, 136 S. Ct. at 2064). Ultimately, the Eighth Circuit in *Lowry* found attenuation, but concluded:

> We do not intend to close the door to future challenges, under *Strieff*, to evidence found in stops like this one. *Strieff*, in declining to adopt a *per se* rule, left that door open. But in such a challenge, we require more evidence of flagrancy or of purpose than is present here.

*Id*. As framed by the Eighth Circuit then, the issue of attenuation in the present case comes down to whether this case presents more evidence of flagrancy or of purpose than was present in *Lowry*. Although a close call in applying an inexact standard, the Court concludes that there is "more evidence."

The *Lowry* court found that the purpose/flagrancy factor favored attenuation, reasoning:

> [The officer] testified that under normal circumstances, he would simply have approached [the defendant] and spoken with him, leading to a consensual encounter rather than a *Terry* stop. He did not do so here because he was busy managing a tense situation with [another individual] inside the other bus shelter and had a non-deputized ride-along officer in his car.

*Id*. at 643.  As a result, the *Lowry* court found the officer's conduct "amount[ed] to an 'error in judgment'" . . . not a "flagrant" or "purposeful" violation of the Fourth Amendment.  *Id*.

Unfortunately in this case, the conduct of the officer was not "mitigated" by such exigencies.  At the time the officer activated his lights and ordered Mullins to approach, he not only lacked reasonable suspicion to conduct a *Terry* stop, he also lacked any extenuating circumstances that explain (in hindsight) his failure to pursue or seek out a simple consensual encounter with Mullins.  Consequently, the Court concludes that, on balance, the factors identified in *Strieff* do not favor the application of the attenuation doctrine as an exception to the exclusionary rule under these narrow facts.  Accordingly, the undersigned

**RECOMMENDS** that the District Court, after making an independent review of the record and applicable law, enter an order **DENYING** the government's MOTION FOR RECONSIDERATION [Doc 47] and **DENYING** DONNELL MULLINS' MOTION TO STRIKE [Doc. 49]  Further, in light of the government's explicit statements not objecting to the earlier REPORT AND RECOMMENDATION [Doc. 28], the undersigned

**RECOMMENDS** that the District Court enter an order **ADOPTING** the earlier REPORT AND RECOMMENDATION [Doc.45] as supplemented and expanded upon by this REPORT AND RECOMMENDATION, thereby **GRANTING** the MOTION TO SUPPRESS. [Doc. 28] filed by Defendant Donnell Mullins on July 30, 2019.

                                                    */s/ John T. Maughmer*
                                                    **John T. Maughmer**
                                                 **United States Magistrate Judge**